UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERARDO BARRERA-MENDOZA #05932-081,

    Movant,

v.

    File No. 1:07-CV-107

    HON. ROBERT HOLMES BELL

UNITED STATES OF AMERICA,

    Respondent.
    _____/

**OPINION**

This matter is before the Court on Movant Gerardo Barrera-Mendoza's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. Defendant filed his § 2255 motion on February 2, 2007. (Dkt. No. 1.) The United States filed a response on July 13, 2007. (Dkt. No. 8.) Movant filed a reply on August 6, 2007. (Dkt. No. 10.) For the reasons that follow, Movant's § 2255 motion will be denied.[1]

**I. Background**

On May 10, 2004, in accordance with a written plea agreement, Movant pled guilty to reentry of an illegal alien after having been previously deported subsequent to an

---

[1] In addressing a motion to vacate or correct a sentence, a court is required to grant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the petitioner is entitled to no relief . . . ." 28 U.S.C. § 2255(b). The Court has determined that no hearing is required in this case.

aggravated felony conviction, in violation of 8 U.S.C. § 1326(a) and (b)(2). On August 2, 2004, Movant was sentenced to seventy months in prison and three years of supervised release. The aggravated felony that supports this sentence arose from a 1990 conviction for delivery of a controlled substance. Also on August 2, 2004, Movant was sentenced to twenty-four months in prison for violating the terms of his supervised release, stemming from a 1995 conviction for illegal reentry and possession of heroine, cocaine, and marijuana. Movant was ordered to serve these two sentences consecutively, resulting in a total prison sentence of ninety-four months. Movant was also sentenced to three years of supervised release for each sentence, to be served concurrently.

Movant's § 2255 motion raises three grounds on which his sentence should be vacated, set aside or corrected.[2] All three grounds rest on claims of ineffective assistance of counsel. First, Movant alleges that counsel should have argued to reduce Movant's sentence under the "Fast-Track" program. Second, Movant argues that counsel failed to challenge the validity of the supervised release violation. Third, Movant argues that counsel did not properly inform Movant of his right to file a writ of certiorari and failed to file a writ of certiorari with the United States Supreme Court.

---

[2]Movant originally raised a fourth ineffective assistance claim on the basis that his counsel should have disputed the categorization of Movant's past crimes in the pre-sentence investigation report, specifically the categorization of delivery of a controlled substance as an "aggravated felony." However, Movant conceded this argument in his reply to the government's response. (Dkt. No. 10, Movant's Opp'n to Govt's Resp. 7.)

## II. Legal Standard

A prisoner who moves to vacate his sentence under § 2255 must show that:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack.

28 U.S.C. § 2255. To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A petitioner can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotations omitted)).

Generally, a petitioner is procedurally barred from raising claims in a § 2255 motion, even those of constitutional magnitude, to which no contemporaneous objection was made or which were not presented on direct appeal. *Frady* at 167-68; *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir. 1996). The procedural default rule does not apply, however, to claims of ineffective assistance of counsel; such claims may be raised for the first time in a

§ 2255 proceeding, without regard to a failure to raise them on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 509 (2003).

In order to prevail on his Sixth Amendment claims of ineffective assistance of counsel, Movant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced Movant and deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. In determining whether counsel's performance was deficient, the inquiry "must be highly deferential":

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time . . . . [A] court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .

*Id.* at 689-90. In determining whether counsel's performance was prejudicial, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Courts are not required to conduct an analysis under both prongs of the *Strickland* test if the claim can be disposed of under one prong. *Id.* at 697; *Butler v. Renico*, 255 F. App'x 939, 945 (6th Cir. 2007); *Mallett v. United States*, 334 F.3d 491, 497 (6th Cir. 2003).

## III. Analysis

**A. Ground One: Ineffective Assistance for Failure to Argue for a "Fast-Track" Sentence Reduction**

Movant argues that he has a constitutional right to a Fast-Track sentence reduction and that counsel's failure to argue for this reduction amounts to ineffective assistance. The Fast-Track program is designed to conserve prosecutorial and judicial resources by encouraging timely guilty pleas from illegal aliens who agree not to contest their removal from the United States. *United States v. Carballo-Arguelles*, 267 F. App'x 416, 420 (6th Cir. 2008). In exchange for a guilty plea, the government agrees to move for up to a four-level reduction in the defendant's base offense level. *Id.* The Fast-Track program was "motivated by the large volume of immigration cases . . . in certain judicial districts" that presented a need for "more efficient processing of these cases." *United States v. Hernandez-Fierros*, 453 F.3d 309, 311 (6th Cir. 2006) (*quoting United States v. Sebastian*, 436 F.3d 913, 915-16 (8th Cir. 2006)). Although Fast-Track reductions are permitted in parts of the United States, the Attorney General has not designated the Western District of Michigan as an appropriate jurisdiction for this program. *See id.*

Movant argues that it is unconstitutional to impose different sentences between jurisdictions based on the same federal law. However, sentencing disparities are lawful in many circumstances, including the program at issue here. Indeed,

> Sentencing disparities can exist for many valid reasons, including giving lower sentences to individuals that cooperate with investigations . . . . [F]ast-track guidelines reductions were specifically authorized by statute due to the unique and pressing problems related to immigration in certain districts.

*Id.* at 313-14; *see also United States v. Contreras-Armendariz*, 207 F. App'x 594, 598 (6th Cir. 2006). Therefore, because the Fast-Track program is not available in this jurisdiction and because the sentencing disparities that result are entirely lawful, Movant's counsel was not ineffective for failing to raise this issue.

**B. Ground Two: Ineffective Assistance for Failure to Challenge Movant's Supervised Release Violation**

Movant contends that he should not have been sentenced for violation of his supervised release because he was deported to Mexico immediately upon his release from prison in 2001. Movant argues that his deportation to Mexico prevented his supervised release from commencing in the United States. However, this argument is meritless because the federal statute that provides the proper procedure for release of a prisoner expressly states that "[t]he term of supervised release commences on the day the person is released from imprisonment . . . ." 18 U.S.C. § 3624(e).

In addition, the Sixth Circuit has repeatedly held that the period of supervised release cannot be tolled during a defendant's absence from the United States. *United States v. Martinez-Bahena*, 290 F. App'x 836, 841 (6th Cir. 2008); *United States v. Catalan*, 499 F.3d 604, 608 (6th Cir. 2007); *United States v. Ossa-Gallegos*, 491 F.3d 537, 544 (6th Cir. 2007) (en banc) ("[I]f Congress had wanted to authorize tolling the period of supervised release while the defendant was outside the jurisdiction of the United States as the result of deportation, it would have expressly indicated this in [18 U.S.C. § 3583].")

Thus, Movant's supervised release period of three years began immediately upon his release from prison in 2001, continued upon his deportation to Mexico, and was still in effect upon his illegal reentry into the United States in 2003. Therefore, Movant's sentence for violation of his supervised release is valid and his counsel's failure to challenge the sentence on this basis was not objectively unreasonable.

**C. Ground Three: Ineffective Assistance of Appellate Counsel for Failure to Explain Movant's Right to File a Writ of Certiorari and for Failure to File a Writ of Certiorari with the U.S. Supreme Court**

Movant argues that his appellate counsel failed to properly inform Movant of his right to file a writ of certiorari with the United States Supreme Court. Movant asserts that, considering his limited English speaking skills, counsel should have better explained the right to file a writ of certiorari. Movant also contends that his counsel was ineffective for failure to file a writ of certiorari.

Movant's contentions are contradicted by the sworn statements of his counsel. In a signed declaration, Movant's counsel stated that she told Movant "that the Sixth Circuit permitted assigned counsel to file a petition for certiorari where the client requests it and where in counsel's considered judgment there were grounds to seek review." (Dkt. No. 8-2, Decl. of Susan M. Damplo 2.) Moreover, Movant's counsel asserts that she often spoke to Movant in Spanish and offered to do so whenever Movant requested. (*Id.*) This declaration comports with the Sixth Circuit's rule regarding the filing of a petition for writ of certiorari. The rule states that appointed counsel is obligated to file a petition only "if the client requests

7

that such a review be sought and, in counsel's considered judgment, there are grounds for seeking Supreme Court review." 6th Cir. R. 101(g). Movant has presented no evidence that he requested his counsel to file a petition.

Furthermore, a criminal defendant has a constitutional right to one appeal of his conviction and to the effective assistance of counsel at such an appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). There is no constitutional right for counsel to seek discretionary review at the Supreme Court level. *Ross v. Moffitt*, 417 U.S. 600, 617-18 (1974). Because that right is non-existent, Movant cannot claim his counsel was ineffective for failure to file a writ of certiorari. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (per curiam). This is because "the right to effective assistance of counsel is dependent on the right to counsel itself." *Lucey*, 469 U.S. at 397 (citing *Wainwright*, at 587-88); *see also Nichols v. United States*, 563 F.3d 240, 251 (6th Cir. 2009); *Self v. United States*, 574 F.2d 363, 365 (6th Cir. 1978) ("[T]here is no constitutional right to counsel to assist in the preparation of an application for a discretionary appeal.") Thus, Movant's counsel was not ineffective for failure to file a writ of certiorari.

### IV. Conclusion

Movant's counsel was not ineffective for failure to argue for a Fast-Track sentence reduction because such a reduction is not available in the Western District of Michigan. Movant's counsel was not ineffective for failure to challenge Movant's supervised release violation because Movant's term of supervised release was correctly in effect during his

8

illegal reentry into the United States. Movant's counsel was not ineffective for failure to inform Movant of the right to file a writ of certiorari or for failure to file a writ, because the record indicates that counsel did inform Movant of this right and that Movant did not ask counsel to file a writ of certiorari. For these reasons, Movant is therefore not entitled to relief under § 2255.

An order and judgment consistent with this opinion will be entered.


Dated: October 21, 2009 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE